First case today is people the appellate. Mr Fafs a the court johnson mornin representing Javon Mays. It was remanded to the t hearing to determine wheth ineffective assistance. A didn't show up. They int his testimony from the A. that Mr Kessinger did not assistance. We believe th On this record, the conc Kessinger did in fact per The Strickland standard i efficient performance and made, but I think is the when he confessed his cli case is a good way to sta against Mr Chandler was f in this case. The Chandle that was admitted at tria of guilt. The three peopl at trial. Despite that ev what was not as bad an er in this case. In that cas accidental or rather it w my client didn't didn't act of killing. So therefo find him not guilty. Well true. In Chandler. Then t was far greater. A simil should occur in closing. was accountable for home where he told the jury fa offense of home invasion. in the course of a home i murder. So he did so in t mistaken belief that he c the jury. My client's not This is after he's already accountable for the actio is prohibited from confes guilt unless there's a le and there's on the record acquiesces in that decisi of those two things here. reason alone, Mr Mays is downhill when Mr Kessinge the prosecutor in which h to be because Mr Kessinge that he committed a home up to that point, there w a home invasion. If you l in the indictment that fo facts contained within th would give Mr Kessinger a to proceed on a theory th had occurred. The direct that he sent to the prose essentially said, you're be easier. I am going to and home invasion. And th to what happened in the N that our case is stronger violation. The prosecutor use that to impeach the d quite as serious as insti against your defendant. S have a prosecutor explicit he filed the charges beca letter and Mr Kessinger a did not even consider tha result in those in those that happened, Mr Kessinge had all along been tellin he didn't testify, he wou Once felony murder charge what he believed Mr Mays to, he should have been t If you testify, you're go is not going to ignore th the prosecutor, these char home invasion would never he had better understood at least tried a differen that would have had at le the jury to find a reason though we didn't challeng of the evidence on direct No one saw who actually s No fingerprints were foun that Mr Mays was wearing clothing. Mr Mays did not I found disturbing about was the fact that in the The letter that Mr Kessin the prosecutor was very e the testimony that Mr Ma look forward to provide. time to put Mr Mays on th a little more than a litt turn when he told the tri my client is gonna lie wh I can't put him on the st essentially had to give h at that given all of thes is a legally indefensible his attorney client privi his client's guilt. Given the decision by the trial ineffective assistance wa the evidence. And for th of the things that I did is in closing, uh, this And I think the record th answers those questions. in Kessinger's letter to on involuntary manslaughter It led to the felony murd prosecutor could dismiss intentional murder charg not entitled to involunta letter admit defendant co We all know why did Kessi from the letter itself. I Mr Kessinger believed he the rules of discovery, w his testimony at the A. R to indicate that he did i There is nothing in the l All he essentially did w worse by giving the prose of guilt. And finally, wo proceeding have been diff not sent the letter? I th of that question is yes a any questions. Thank you. So I want to start with w four questions because I response to those questio sent back, those were the the information preclude the instruction? Did it a Why did he send the lette been different? Had it no the last question answers counsel was ineffective an by that. And a lot today and a lot that was in the the deficiency was, but i what the prejudice was th U. S. Supreme Court made just last week in Kenton Alabama that no matter, e with clear deficiency, yo that that resulted in pre can see that this is clea I would concede that ther Um, how bad does it have Well, in my arguments, I' I think there were errors they were significant, bu understood. I understand. if you're talking to peop on the street, they're go So this guy's lousy. He m an unfamiliar territory. come here to defend defen not here to defend Mr. Ke to say it didn't prejudic Kessinger's letter preclud No, Kessinger's letter di involuntary instructions to withdraw the other mur and knowing that were char with felony murder. That state's prerogative to do what they did here. It wa letter that precluded tha the letter and met feloni it did. But that said, wh The state couldn't introd into evidence. We couldn' to the stand. We still ha independent, wholly unrel anything that was in that the defendant had in fact murder. The state did it. the admission in terms of There was no value to it. to that letter. Why did h honestly said he sent it that felony murder chargi from it. Clearly that was the fourth question again on. Would it have resulte No, resoundingly no. The guilty beyond a reasonabl him guilty in our case an ever got up there and tes who was the victim's wife a man wearing a ski mask shot her husband entered a gun to her head and thr for items that she did no Video surveillance at Wal just a couple of hours be showed this defendant in Katie Faber, who lived on who apparently have been and knew him well, testif a gunshot, she saw a defe jacket run out of the Spi camouflage jacket that wa an area where the defenda shortly after the gunshot of that jacket is defenda slip, defendant's name on addressed to him, defend and another envelope in t of that jacket tested pos A pair of Reebok shoes th defendant was arrested in a gel lift taken from the Spinks apartment. Again, entered that apartment. D monitoring went off at ap time as the murder indicat 100 m boundary around his evidence and much more wa to Kessinger's letter. Al was completely unrelated that defendant would late it resulted in the jury b murder. Defendant failed without the charge of hom and the felony murder cha to trial on the original defendant had been found murder? Defendant still w felony murder. And I woul conceded this in the init the testimony that was gi presented the there again of murder in this state. murder. He was found guil And I cited two cases, Al I'm not sure I'm pronounc but they're both Supreme both of those instances, charged with either knowi murder. Based on testimon the trial, they were subs of murder. And in both in appeal, they said that it  one charge of murder. He He was found guilty of mu itself is not charged. Y of those instances, the p was not had not been previ also call into question t communication. And I say fact that the defendant h said he definitely wanted he had shared to be used. the crankle hearing. He d for Kessinger to use it. testified that he definit to use it. Well, what was with it? How can he use i that it could be shared? I had no written permissi But I talked with him for what the strategy would b it and he agreed. And aga agreement. Kessinger ackn But it was still agree. W hearing, if you really re defeated his own argument he was there. He was uneq I wanted the jury to hear the jury to hear this. I all along was that it was party, the jury, he waived privilege. He was not pre to respond to a couple of made in the reply rate. O emphasis put on this whol between when the initial made and the fact that de subsequent to it. Truthfu without any relevance her that any disclosure is an been waived. There are no made on those clear holdi those cases in my brief. cited any cases suggestin subsequent to an unintent you didn't actually waive doesn't cite them because Which brings me to the ne did testify voluntarily. you served on Friberg and where this exact scenario that whenever a defendant on a right to testify and This is the problem that they did testify, they wi forced them to testify. I they will say they wanted prevented them. This cour as a lurking bomb. And he that, the court said that the time to thoroughly ad prior to them taking the bench to testify that th this. That's what the tri The trial court went thro the defendant said, I'm b don't think I have a choi said, well, okay, have yo testify? Have you been to to testify? Is anybody ma And it was clear it was n for him. It was a dilemma admonished. And despite f of this court in the Frib are dealing with the afte bomb that has now once aga the evidence suggests that had with the court show t decision. It does not sup his testimony was given i It was not subject to sup given under a grant of im where courts have found t Those are not the facts h was the direct result of the jury to hear his acco was making the decision t jury knew was nothing inv jury knew again that the identified a man in a cam and the circumstantial ev the state overwhelmingly was that man in the camif where the jury sat. Okay. defendant didn't want thi unchallenged. So how does has to get his narration. and tell them his side of the dilemma. It wasn't un That's the dilemma. Every they have to testify hone stacked against them beca they committed the offense of defendants argument wa he didn't anticipate felo could he possibly have fu prior to taking the stand was important for him to of that informing defenda of whatever strategy is i you look at the A. R. D. at the practical hearing trial court's recollectio happened. He was fully in to trial in those dates l there could not have been risk of testifying with f acknowledges that you did radar anywhere. But after he was charged, he spoke two separate times. He sp selection and he spoke to the jury selection. And t it was a rather combative was unhappy, which everyb um, the evidence had come feared it would showing t one who had shot the gun the one who had entered t defendant was the one we and the inclination, the that defendant was going and say, wasn't me. It wa and Kessinger explained t you do that. I cannot let knowing you will not test was a lot of back and fort that Kessinger went to th the trial court of these a motion to withdraw the hearing recalled all of t I said, you can't recall. But I said, I would allow on the stand, get basic i let him testify in a narr exactly what happened here that Kessinger was encoura this testimony. Actually, Maybe at one point he was jury won't hear this with But when it became clear was fault, Kessinger said which the defendant ackno be responsible if he put let him testify untruthfu was more than a cursory c the charges were filed. B testified as to what his what the risk were of such the responsibilities if h He made that decision. T It was not involuntary or the trial court's decisio was no prejudice that res no ineffective assistance erroneous on the other ar of whether Kessinger misa I stand by what I put in he was on a sinking ship don't appear to be any th ask this court. Mr Baps, this prejudice argument? sinking ship, one that he admitted his client's gui didn't even address Chand that the defendant get a is very close to the hatt sites where the attorney and said, you're going to after you do, then we'll because it was a death ca and Mr Kessinger did. He to do that under these ci he say to the jury that c the jury that the defend for home invasion, which felony murder. And was th statement? It wasn't excl uh, the state argues that you know, felony murder, hadn't done everything he the dog back. If you never the prosecutor never file and home invasion charges it goes to jury on intenti says they could have inst disagree. Uh, there was n the information or indict that the state was pursui The three cases that the Allen and Russo Chucky. U involved in instances whe on notice, specifically t on that fact in saying th charges were appropriate. there actually was an att that was in existence at trial. Uh, so the prosecu murder and attempt robbe he gets the instructions Allen and Russell Rosso C of those cases was the de another felony. But the c court in those cases spec there's no surprise to de beginning, everybody talk murder case that there wa it occurred and that murd course of that offense. S different. If this case g the notice that the defen intentionally shooting so indication that the prose to prove a home invasion. facts of the home invasio the prosecutor never char that either. But let's sa completing the evidence i presented to the jury tha invasion. In fact, becaus was actually threatened a and the victim was shot i they were trying to get i the judge isn't isn't Mis when she says murder is m and you'd be entitled if it to a felony murder in without the charge. If th I agree with your honor a that the state has cited because the defendants in that that's what that's t that the state was procee come out of trial, that's you have to let the defe time. If you look at the statement of the prosecu talk about the fact that invasion. He's talking ab murder and I would just s would be a serious due pr at the end of all this, t said, well, we want to, w murder. Now we want to in on filming again. I know they say, but in each and there is an indication th that this was the way thin In this case, the only re went the way it went was attorney's letter to the him out that there's a fe absent that letter, there the defense that this is proceeding. And I don't t would be satisfied if the on felony murder in the i also mentions the lurkin claiming that, oh, I test I told the judge that I w really didn't. I was forc we've got a case where th told that his testimony w I'm fairly confident that he found out that he was crime that state was char unless court has further to note that the Strickl the outcome specifically look at Strickland, it sa probability that but for deficiencies that the def The reasonable probabilit was a probability that un in the result. I think on an undermining of that c get a new trial. Thank yo